Robert T. **PRITCHARD** and Elizabeth Ann Pritchard, Plaintiffs,

v.

**DOW AGRO SCIENCES**, a division of Dow Chemical Company, Southern Mill Creek Products of Ohio, and Residex Products, Defendants.

Civil Action No. 07–1621.

United States District Court, W.D. Pennsylvania.

Nov. 12, 2009.

---

David B. Rodes, Goldberg, Persky & White, P.C., Pittsburgh, PA, for Plaintiffs.

Brad E. Rago, Barnes & Thornburg LLP, Chicago, IL, Kimberly A. Brown, Vincent M. Roskovensky, Thorp, Reed & Armstrong, Pittsburgh, PA, William E. Padgett, Barnes & Thornburg LLP, Indianapolis, IN, for Defendants.

## MEMORANDUM OPINION

NORA BARRY FISCHER, District Judge.

### I. INTRODUCTION

Presently before the Court are several motions related to Plaintiffs Robert T. Pritchard and Elizabeth Ann Pritchard's proffer of expert testimony by Dr. Bennet Omalu and Defendants Dow Agro Sciences ("Dow") and Southern Mill Creek Products of Ohio's ("Southern Mill") *Daubert* motion challenging same. Specifically, this Memorandum will address the following motions: (1) Defendants' Motion to Strike the Declaration of Dr. Bennet I. Omalu (Docket No. 137); (2) Dow's Motion to Compel Supplemental Responses to Requests for Production of Documents Two and Three (Docket No. 140); and (3) Plaintiffs' Motion for Leave to Amend Discovery Responses *Nunc Pro Tunc* (Docket No. 143). The Court heard oral argument from counsel regarding Defendants' motion to strike and Plaintiffs' response (Docket No. 139) thereto, as well as brief argument on the other motions at a hearing on September 22, 2009 (Docket Nos. 141, 142). After the hearing, the parties submitted supplemental briefing on the motions, which are now fully briefed and ripe for disposition. For the following reasons, and in accordance with the Order of Court issued on October 29, 2009, Defendants' Motion to Strike [137] is DENIED, Dow's Motion to Compel [140] is DENIED, and Plaintiffs' Motion for Leave [143] is GRANTED.

### II. BACKGROUND [1]

The instant lawsuit is a toxic tort case in which Mr. Pritchard and his wife assert that

---

1. As the parties are well aware of the factual and procedural background of this case, the Court will limit its discussion to the background neces- sary for the resolution of the current motions. For further detail regarding same, *see Pritchard et al. v. Dow Agro Sciences, et al.,* 255 F.R.D. 164

chemicals manufactured and sold by Defendants Dow and Southern Mill caused Mr. Pritchard to develop Non–Hodgkins Lymphoma. (Docket No. 23 at ¶¶ 7–10, 20). Plaintiffs, through their former counsel, initially identified Dr. Emilio Navarro as a potential expert witness as to medical causation in this matter. The parties then engaged in written discovery with Dow serving Plaintiffs with requests for production of documents and requests for admissions on June 18, 2008. *Pritchard*, 255 F.R.D. at 168–69. Plaintiffs' former counsel and defense counsel agreed to an extension of time, until August 20, 2008, for Plaintiffs to respond to said discovery. *Id.* Plaintiffs' former counsel missed the deadline and served responses to the written discovery on August 25, 2008.[2] *Id.*

Dow's requests and Plaintiffs' responses to same included the following:

Request No. 2: All reports, draft reports, affidavits and/or statements prepared by any expert witnesses that will testify in the trial of this matter and a copy of the most recent curriculum vitae for each such expert.

Response: All pertinent documents within the possession of the Plaintiffs and/or the Plaintiffs' attorneys have been provided or have been provided in the Plaintiffs' initial disclosures. See reports and documentation provided by Doctor Emilio Navarro. If additional documents applicable to the above request are obtained in the future by Plaintiffs and/or Plaintiffs' Attorneys, said documents will be provided.

Request No. 3: Each Document relied upon, provided to and/or prepared by Plaintiffs' testifying experts, including but not limited to statements, reports, draft reports, summaries, letters or other items, pertaining to the allegations in the Second Amended Complaint.

(W.D.Pa. Jan.5, 2009), as well as 2009 WL 1813145 (W.D.Pa. June 25, 2009).

**2.** The Court notes that the missed deadline on the requests for admissions resulted in litigation over the Defendants' objections to Plaintiffs' withdrawal of the requests for admissions. *Pritchard*, 255 F.R.D. 164. In that context, Defendants took the position that Plaintiffs should

Response: All pertinent documents within the possession of the Plaintiffs and/or the Plaintiffs' attorneys have been provided or have been provided in the Plaintiffs' initial disclosures. If additional documents applicable to the above request are obtained in the future by Plaintiffs and/or Plaintiffs' Attorneys, said documents will be provided.

(Docket No. 140 at 2–3). Neither Dow's requests nor Plaintiffs' responses have been amended since Plaintiffs' submissions on August 25, 2008. Numerous extensions of time were granted to Plaintiffs to both complete expert discovery as to medical causation including finding a new expert witness and substitute counsel as Plaintiffs' former counsel had sought to withdraw. Plaintiffs' current counsel, David Rodes, Esquire, and his firm, Goldberg, Persky & White, P.C., entered an appearance on April 30, 2009. (Docket No. 115). The Court then entered its Fourth Amended Case Management Order on May 8, 2009, setting forth an expedited discovery schedule due to the numerous delays in this case. That Order provides, in pertinent part:

6. Defendants shall file any *Daubert* motion related to Plaintiffs' medical causation expert(s) on or before *July 22, 2009.* Said motion may include affidavits of Defendants' medical expert witnesses. To the extent that Defendants rely on any such affidavits, Defendants shall make such witnesses available for deposition, at Plaintiffs' expense, between *August 3, 2009 and August 19, 2009.*

7. Plaintiffs shall file their response to any *Daubert* motion on or before *August 21, 2009.*

8. Defendants shall file any reply to Plaintiffs' response on or before *September 4, 2009.*

not be permitted to withdraw the admissions and rely on their responses, which were only five days late. It is interesting that in their motion to compel Defendants now seek to bind Plaintiffs to their responses to the requests for production of documents made as a part of the same written discovery.

9. The Court will hear oral argument as to any *Daubert* motion on **September 16, 2009 at 1:00 p.m.**[3]

(Docket No. 120).

Pursuant to this Order, Plaintiffs identified Dr. Bennet Omalu as their expert on medical causation and submitted his expert report to Defendants on June 1, 2009. (Docket No. 138–2). Thereafter, the parties engaged in correspondence regarding a dispute pertaining to the disclosures made by Dr. Omalu which resulted in Plaintiffs providing Defendants with a series of articles upon which Dr. Omalu relied in preparing his expert report. Dr. Omalu was then deposed on June 26, 2009. (Docket No. 128–3).

On July 22, 2009, Defendants filed their Motion To Exclude the Expert Causation Testimony of Dr. Omalu (Docket No. 127), along with their Brief in Support of said Motion. (Docket No. 128). Defendants maintain that Dr. Omalu is not qualified to render the opinions in his report. (*Id.*). They also argue that Dr. Omalu's opinions regarding both general causation and specific causation do not meet the reliability standards set forth in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and incorporated into Federal Rule of Evidence 702. In support of their motion, Defendants attached voluminous exhibits including the expert reports of Marshall A. Lichtman, M.D., Seymour Grufferman, M.D. and Michael Greenberg, M.D. (Docket Nos. 128–4, 128–5, 128–6).

In response to Defendant's Motion to Exclude, Plaintiffs filed their Brief in Opposition on August 28, 2009. (Docket No. 135). Plaintiffs argue that each of Defendants' objections are lacking in merit and that Dr. Omalu's testimony should be admitted in this action. (Docket No. 135 at 3). Plaintiffs also attached the "Declaration of Bennet I. Omalu, MD, MBA, MPH" in support of their response. (*Id.*).

Defense counsel than contacted the Court and intimated that they intended to file a motion to strike the affidavit of Dr. Omalu.

The Court issued an order and briefing schedule regarding same on September 3, 2009. (Docket No. 136). Defendants filed their Motion to Strike the Declaration of Dr. Bennet I. Omalu (Docket No. 137), and their Brief in Support of said Motion, on September 9, 2009. (Docket No. 138). Plaintiffs filed a brief in opposition to same on September 18, 2009. (Docket No. 139). Also on September 18, 2009, Defendants filed the pending Motion to Compel. (Docket No. 140).

The Court heard oral argument regarding Defendants' Motion to Strike on September 22, 2009 and briefly addressed the Dow's Motion to Compel. During the hearing, Plaintiffs made an oral motion to amend their responses to Defendants' requests for production of documents. (Docket No. 142). At the conclusion of the hearing, the Court ordered that Plaintiffs file a brief in support of their motion to amend and granted Dow leave to file a response to same. (Docket No. 141). In this regard, Plaintiffs' Motion to Amend (Docket No. 143) and Brief in Support (Docket No. 144) were filed on September 30, 2009. Thereafter, Dow filed their Reply Brief on October 7, 2009. (Docket No. 146).

The Court will first address the Defendants' Motion to Strike and then the related Dow's Motion to Compel and Plaintiffs' Motion for Leave to Amend.

### III. MOTION TO STRIKE

■ In Defendants' Motion to Strike, they contend that the declaration of Dr. Omalu violates Rule 26(a)(2) of the Federal Rules of Civil Procedure as it contains opinions that were not expressed in his initial expert report. (Docket No. 138). Rule 26(a)(2) provides that:

(2) Disclosure of Expert Testimony.

(A) In General. In addition to the disclosures required by Rule 26(a)(1), a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705.

---

**3.** The Court notes that the hearing on Defendants' *Daubert* Motion has been re-set for November 17, 2009 in light of the Defendants' motion to strike and subsequent motions practice related to same.

(B) Written Report. Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. The report must contain:

(i) a complete statement of all opinions the witness will express and the basis and reasons for them;

(ii) the data or other information considered by the witness in forming them;

(iii) any exhibits that will be used to summarize or support them;

(iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;

(v) a list of all other cases in which, during the previous four years, the witness testified as an expert at trial or by deposition; and

(vi) a statement of the compensation to be paid for the study and testimony in the case.

FED.R.CIV.P. 26(a)(2). A party is required to supplement expert disclosures made under Rule 26(a)(2) pursuant to Rule 26(e)(2). FED. R.CIV.P. 26(e). Failure to abide by the disclosure requirements in these provisions is governed by Rule 37(c)(1), which provides that "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R.Civ.P. 37(c)(1). Defendants contend that the sanctions imposed pursuant to Rule 37(c)(1) are "automatic." [4] (Docket No. 138). However, prior to excluding evidence, the

United States Court of Appeals for the Third Circuit has held that a district court must consider:

(1) the prejudice or surprise of the party against whom the excluded evidence would have been admitted;

(2) the ability of the party to cure that prejudice;

(3) the extent to which allowing the evidence would disrupt the orderly and efficient trial of the case or other cases in the court; and

(4) bad faith or wilfulness in failing to comply with a court order or discovery obligation.

*Nicholas v. Pennsylvania State University,* 227 F.3d 133, 148 (3d Cir.2000). In addition, " 'the importance of the excluded testimony' should be considered." *Konstantopoulos v. Westvaco Corp.,* 112 F.3d 710, 719 (3d Cir. 1997) (quoting *Meyers v. Pennypack Woods Home Ownership Ass'n,* 559 F.2d 894, 904 (3d Cir.1977)); *see also Hurd v. Yaeger,* Civ. A. No. 3:06–1927, 2009 WL 2516934, at *2–5 (M.D.Pa. Aug. 13, 2009) (applying this standard to a motion to strike expert rebuttal reports as violative of Rule 26(b)(2)).

Defendants object to the form, timing and substance of Dr. Omalu's declaration. The Court will address each, in turn.

### A. Objection to the Form and Timing of the Declaration

■ As a threshold matter, Defendants contend that Dr. Omalu's "declaration is not proper expert rebuttal" because it is in the form of a declaration drafted by Plaintiffs' counsel as opposed to a rebuttal expert report drafted by Dr. Omalu himself.[5] (Docket No. 138 at 11–12). A plain reading of Rule 26(a)(2)(B) does not require that an expert personally draft his report, but instead provides that the expert report must be "pre-

---

**4.** To this end, the Court notes that many of the decisions cited by Defendants are distinguishable on the basis that the factors required to be applied by the Third Circuit were not used. *See e.g., Rimbert v. Eli Lilly,* 2009 WL 2208570 (D.N.M. July 21, 2009); *Brumley v. Pfizer, Inc.,* 200 F.R.D. 596, 604 (S.D.Tex.2001); *Leviton Mfg. Co., Inc. v. Nicor, Inc.,* 245 F.R.D. 524, 531 (D.N.M.2007); *Ciomber v. Cooperative Plus, Inc.,* 527 F.3d 635, 641 (7th Cir.2008).

**5.** The Court notes that Plaintiffs' counsel represented at oral argument that he discussed the matters contained in the declaration with Dr. Omalu, drafted the declaration, emailed a copy to Dr. Omalu, who then signed the declaration without making any additional changes. (Docket No. 142 at 76).

pared and signed by the witness." FED. R.CIV.P. 26(a)(2). Moreover, the 1993 Advisory Committee Notes permit the assistance of counsel in preparing an expert's report, explaining that:

> Rule 26(a)(2)(B) does not preclude counsel from providing assistance to experts in preparing the reports, and indeed, with experts such as automobile mechanics, this assistance may be needed. Nevertheless, the report, which is intended to set forth the substance of the direct examination, should be written in a manner that reflects the testimony to be given by the witness and it must be signed by the witness.

FED.R.CIV.P. 26, 1993 Advisory Committee Notes. In addition, Defendants ignore the earlier negotiations related to the Court's Third and Fourth Amended Case Management Orders, wherein upon Defendants' request, and counsel's agreement, the Court granted Defendants leave to file affidavits from their experts in support of any *Daubert* motion that they would potentially file attacking Plaintiffs' expert. *See* Docket No. 76, Third Amended Case Management Order ("Defendants shall file any *Daubert* motion related to Plaintiffs' medical causation expert(s) on or before **June 1, 2009.** Said motion may include affidavits of Defendants' medical expert witnesses."); Docket No. 120, Fourth Amended Case Management Order ("Defendants shall file any *Daubert* motion related to Plaintiffs' medical causation expert(s) on or before **July 22, 2009.** Said motion may include affidavits of Defendants' medical expert witnesses."). Defense counsel also represented in an email to the Court's Law Clerk on March 10, 2009 that the submission of affidavits from expert witnesses in support of a *Daubert* motion was "the usual practice based on [his] experience." *See* Email from William Padgett, Esquire to the Court's Law Clerk, et al., dated March 10, 2009. Defendants simply cannot have it both ways, requesting leave to proceed in a certain manner and than objecting to Plaintiffs' use of a similar strategy.[6]

Further, Plaintiffs' response to Defendants' *Daubert* motion and the declaration of Dr. Omalu plainly state that the purpose of the declaration is to rebut Defendants' expert reports and testimony of their experts. *See* Docket No. 135 (emphases added) (*"By way of rebuttal* to the Defense experts' opinions on the epidemiology, Dr. Omalu has submitted a Declaration that *amplifies* his previously-stated opinion that an association between chlorpyrifos and NHL is to be found in the published literature."); *see also* Docket No. 135–2 at 1 ("I make this Declaration in support of my June 1, 2009 Medico–Legal Report concerning Robert T. Pritchard, Sr. ...., by way of rebuttal to the reports and testimony of Marshall Lichtman, M.D., Seymour Grufferman, M.D. and Michael I. Greenberg, M.D."). More importantly, counsel were also advised at the outset of this case and upon the finalization of the Fourth Amended Case Management Order that the Court would permit live testimony of experts at any *Daubert* hearing. (Docket No. 142, *Trans. Hr'g 9/22/09* at 25). Instead of proceeding in this fashion, Plaintiffs have submitted the declaration of Dr. Omalu for the purpose of rebutting the assertions of the defense experts regarding Dr. Omalu's opinions. *See Fisher v. Clark Aiken Matik, Inc.,* Civ. A. No. 99–1976, 2005 WL 6182824, at *1 (M.D.Pa. Sept. 26, 2005) (holding that "[t]here is neither a violation of the applicable discovery rules nor sanctionable conduct in the submission of [a supplemental expert report] to rebut the *Daubert* motion."). The Court fails to see how the facts set forth in the declaration would not be elicited from Dr. Omalu on either cross-examination or redirect had he testified live at the *Daubert* hearing. Accordingly, the Court will consider the Plaintiffs' submission as rebuttal to the opinions of Defendants' experts.

■ Defendants further contend that the filing of the declaration was in violation of the Court's Fourth Amended Case Management Order, which did not specifically permit the filing of rebuttal expert reports. The Court recognizes that the Fourth Amended

---

**6.** The Court notes that the fact that Defendants submitted expert reports instead of affidavits

does not change this analysis.

Case Management Order is silent regarding either party filing rebuttal expert reports, but, again, the expedited expert discovery schedule contemplated that the Plaintiffs would be permitted to present live testimony of their expert at the *Daubert* hearing. Therefore, the Court does not find error with the filing of the declaration due to the unique circumstances of this case and the expedited expert discovery schedule.[7] Moreover, as a practical matter, Defendants were served with Dr. Omalu's declaration August 28, 2009, well in advance of the *Daubert* hearing which was initially scheduled for September 22, 2009 and later rescheduled on November 17, 2009. This period of time provided Defendants sufficient time to respond to any material in the affidavit prior to the hearing whereas if Plaintiffs had elected to simply present oral testimony of Dr. Omalu, Defendants would have had little or no time to prepare an effective cross examination.[8]

Finally, Defendants maintain that even if the declaration is considered a rebuttal expert report, it was untimely submitted as required under Rule 26(a)(2)(C)(2). Rule 26(a)(2)(C)(2) provides:

> Time to Disclose Expert Testimony. A party must make these disclosures at the times and in the sequence that the court orders. *Absent a stipulation or a court order,* the disclosures must be made:
>
>> (i) at least 90 days before the date set for trial or for the case to be ready for trial; or
>>
>> (ii) *if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B), within 30 days after the other party's disclosure.*

FED.R.CIV.P. 26(a)(2)(C)(2) (emphases added). Defendants contend that the 30 day time period was violated because they served their expert reports on July 22, 2009 and Plaintiffs filed Dr. Omalu's declaration on August 28, 2009, 37 days later. However, Plaintiffs' response to the Defendants' *Daubert* motion was initially due on August 21, 2009, within the 30 day time period, and Plaintiffs, with Defendants' consent, filed a motion for a one-week extension of time for the filing of their response due to a death in Plaintiffs' counsel's family. (Docket No. 133). The Court granted Plaintiffs' motion, making their response to Defendants' *Daubert* motion due on August 28, 2009. (Docket No. 134). Accordingly, due to the parties' stipulation and Court Order, there is no violation of Rule 26(a)(2)(C)(2) by Plaintiffs' submission on August 28, 2009.

**B.** *The Declaration does not include any "new opinions"*

■ Defendants also argue that the declaration contains "new opinions" which were not expressed by Dr. Omalu in his expert report. (Docket No. 138 at 5–12). Defendants maintain that the new opinions were therefore not disclosed as required under Rule 26(b) (2)(B)(1), and request that the declaration be stricken. (*Id.* at 12–13). As noted above, Plaintiffs contend that the declaration is merely rebuttal and provides an "amplification" of Dr. Omalu's opinions previously expressed in his report and during his deposition. (Docket No. 139 at 3).

■ Caselaw establishes that a declaration should be stricken if it contains new opinions or information which is contradictory to that set forth in the expert report, *see Stein v. Foamex Intern., Inc.,* No. Civ. A. 00–2356, 2001 WL 936566 (E.D.Pa.2001)[9], but it need

---

7. However, if a similar situation would arise in the future, Plaintiffs would be well advised to seek leave of court prior to acting without an express court order. If Plaintiffs had sought leave of court in this situation, the resulting motions practice and oral argument may have been avoided.

8. Defendants were also permitted to bring the pending motion to strike and the *Daubert* hearing was delayed due to the briefing schedule and argument on this motion. Further, in conjunction with their Reply in Support of Motion to

Exclude the Expert Causation Testimony of Dr. Bennet I. Omalu, Defendants have submitted the October 29, 2009 Declaration of Dr. Seymour Grufferman in order to rebut the declaration submitted by Dr. Omalu. (Docket No. 148–2 at 82–86.).

9. Defendants rely heavily on the decision in *Stein v. Foamex Intern., Inc.,* No. Civ. A. 00–2356, 2001 WL 936566 (E.D.Pa.2001), which is distinguishable from the case at bar. The affidavit at issue in that case was filed in response to a partial motion for summary judgment and subject to the

not be stricken if it contains merely "an elaboration of and consistent with an opinion/issue previously addressed" in the expert report, *Emcore Corp. v. Optium Corp.*, 2008 WL 3271553, at *4 (W.D.Pa. Aug. 5, 2008) (citing *Thompson v. Doane Pet Care Co.*, 470 F.3d 1201, 1203 (6th Cir.2006)). Defendants cite the following three statements of the declaration which they argue are "new opinions":

(1) opinions regarding an epidemiology study entitled *Won Jin Lee et al., Cancer Incidence Among Pesticide Applicators Exposed to Chlorpyrifos in the Agricultural Health Study*, 96 Journal of the National Cancer Institute 1781 (December 2004);

(2) opinions regarding Pritchard's chlorpyrifos exposure levels; and,

(3) a statement that differential etiology involves ruling out factors other than the agent under consideration as a cause of the disease in question and opinions regarding just two of the many alternative potential causes of Pritchard's NHL.

(Docket No. 138 at 7). The Court is not persuaded by Defendants' arguments. After conducting a careful review of Dr. Omalu's report, his deposition testimony and the declaration, as well as the defense expert reports, the Court finds that the declaration does not contain new or contradictory opinions but offers elaboration of his initial opinions and rebuts the opinions in the defense experts' reports. The Court will address each of Defendants' arguments below.

### i. *Statements Regarding the 2004 Lee Study*

Dr. Omalu's declaration states that "[t]he 2004 Lee Study is an important part of the medical /scientific literature on which I relied in forming the opinion expressed in my Report." (Docket No. 135–2, Omalu Declaration at ¶5). It also provides that "the 2004 Lee Study strongly supports a conclusion that high-level exposure to chlorpyrifos is

associated with an increased risk of NHL." (*Id.* at ¶ 14). Defendants object to the inclusion of these and other statements regarding the 2004 Lee Study because that article is not referenced in Dr. Omalu's expert report, which cites only to a single article in support of his opinions. Plaintiffs, however, contend that any deficiencies in the report were cured by the Plaintiffs' submission of articles to Defendants prior to Dr. Omalu's deposition upon Defendants' request and on the basis that Dr. Omalu specifically testified during the deposition that he relied on the 2004 Lee Study. (Docket No. 138).

The Court agrees with Plaintiffs' position regarding the 2004 Lee Study. Indeed, the initial report contained only one reference to an authoritative text and stated that Dr. Omalu's "analysis and opinions in this case are based on [his] training, education, knowledge, experience and *published medical literature.*" (*See* Docket No. 128–10, Dr. Omalu Report, at 5 (emphasis added)). However, after negotiations between counsel, Dr. Omalu's report was supplemented with published articles, including the 2004 Lee Report. The Court must therefore consider this supplementation as a part of Dr. Omalu's report. *See* FED.R.CIV.P. 26(e)(1) and (2) (permitting a party to supplement its expert disclosures "if the party learns that in some material respect the disclosure or response is incomplete or incorrect."). Moreover, Dr. Omalu testified directly regarding the 2004 Lee Study during his deposition. (Docket No. 139–4 at 22, Dr. Omalu deposition at 81–83). Any further explanation of that study in the declaration is in direct response to the defense experts' opinions interpreting same. (*See* Docket No. 128–5 at 42–3, Dr. Grufferman Report (commenting on each of the articles submitted by Dr. Omalu and specifically stating with respect to the 2004 Lee Report, "[t]his is a cohort study using data from the AHS to assess the role of chlorpyrifos exposure in NHL risk ... It is the most

requirements of Rule 56(e). In addition, the district court in *Stein* found that the affidavit was contradictory to earlier testimony, which, as addressed below, is not the situation presented by the submission of Dr. Omalu's declaration. Finally, the *Stein* case did not involve an expedited schedule for expert discovery as is present in this

case. There, the expert report was due December 1, 2000, the expert was deposed on February 28, 2001, the opposing party filed a motion for partial summary judgment on March 14, 2001 and the expert affidavit was attached in response to that motion on April 6, 2001. *Stein*, 2001 WL 936566, at *1–2.

relevant and highest quality research on chlorpyrifos and NHL. It very clearly and persuasively shows no association between the two. It seems to have been ignored by Dr. Omalu.")). Accordingly, the declaration contains opinions and facts which assuredly would have been elicited from Dr. Omalu during the *Daubert* hearing, whether on cross examination or in rebuttal and the Court will not strike these opinions.

### ii. Statements Regarding Chlorpyrifos Exposure

Defendants also maintain that the statements in Dr. Omalu's declaration regarding Mr. Pritchard's exposure to chlorpyrifos should be stricken as Dr. Omalu did not express any opinion related to exposure in his expert report and testified at his deposition that he did not conduct an exposure analysis. However, Dr. Omalu's expert report plainly states the following regarding Mr. Pritchard's exposure to Dursban:

> Mr. Pritchard was self-employed as an exterminator/pest control operator. He used the chemicals Dursban, Dursban TC, Dursban 4E, Dursban 2E, Dursban LO, Dursban Pro and Dursban granules. *He was in contact with one or more of these chemicals on a daily basis beginning approximately July 1984,* when he began to use the chemicals to exterminate termites and other pests.

> . . .

> Did Robert Pritchard's prolonged exposure to Dursban insecticides contribute to the patho-etiology of his Non–Hodgkins Lymphoma?

> Yes, *Robert Pritchard's prolonged occupational exposure to Dursban* insecticides significantly contributed to the patho-etiology of his Non–Hodgkins Lymphoma.

> . . .

> *Robert Pritchard was chronically exposed to Dursban insecticides for about 20 years.*

> . . .

> Mr. Pritchard's diseases, which were caused by *his chronic exposure to Dursban,* are irreversible and permanent.

(Docket No. 128–10 at 61–3, Omalu Report at 2, 3, 4) (emphases added). In his declaration, Dr. Omalu then applies these assumed facts regarding Mr. Pritchard's exposure to the 2004 Lee Study, in an effort to rebut the defense expert's opinion. (*See* Docket No. 128–5 at 34–6, Dr. Grufferman Report (discussing the two studies by Lee, explaining that the 2004 Lee Study analyzed the association between chlorpyrifos and NHL, "by lifetime exposure levels and by intensity weighted exposure levels")). Specifically, Dr. Omalu states the following:

15. Although the Defense Experts have assumed that Mr. Pritchard had only limited exposure to Dursban, there is evidence that he had a very high level of exposure over a long duration. As a full-time applicator who used Dursban by hand spray on a daily basis, Mr. Pritchard's lifetime exposure-days and intensity-weighted exposure-days greatly exceed those of the occasional agricultural applicators who made up the bulk of the Agriculture Study population.

16. Pritchard's high exposure differentiates his case from a typical unexplained cancer case. Because the dose-response relationship cannot be assumed linear, in a particular high-exposure case the established pathogenic tendencies of an agent such as chlorpyrifos may manifest in a disease outcome that is not recognized (or not conclusively recognized) in broad based population studies featuring lower-level exposures.

(Docket No. 135–2, Declaration of Dr. Omalu at ¶¶ 15, 16).

As to Defendants' initial objection, that Dr. Omalu's expert report lacked an opinion regarding Mr. Pritchard's exposure levels, the initial report contained statements regarding Mr. Pritchard's exposure to Dursban, and will not be stricken on that basis. Moreover, the additional statements related to the Lee Study are merely rebuttal to the defense

experts' opinions and a further elaboration of the opinions expressed in the initial expert report. Accordingly, the declaration does not include any new opinions but serves to further elaborate upon the initial opinions expressed in the report and rebut the defense experts' opinions. Thus, these statements will not be stricken.

### iii. Statements Regarding the Method of Differential Etiology

Defendants also argue that Dr. Omalu's statements in the declaration regarding the method of differential diagnosis or etiology should be stricken. Dr. Omalu's expert report states the following regarding this method.

> The method used to determine causation in this case is a form of the widely accepted method of differential diagnosis. With respect to a causation determination, and in the field of anatomic and clinical pathology, the method would more accurately be termed "differential etiology." This method involves attribution of patient-specific disease etiology to a patient history of substantial exposure to a known pathogen based on biologic plausibility, as established by studies or reports linking that pathogen and/or related chemicals to the disease in question and/or related disease processes. This method is generally accepted across disciplines in the field of medicine, and in the discipline of anatomic and clinical pathology in particular.

(Docket No. 128–10, Dr. Omalu Report at 4). Dr. Omalu testified at his deposition that he had considered and analyzed other potential causes of Mr. Pritchard's Non–Hodgkins Lymphoma. (Docket No. 128–2, Dr. Omalu Deposition at 168). He further explained that he did not list the other potential causes in his expert report because his role was limited to offering an opinion regarding whether Mr. Pritchard's Dursban exposure caused his NHL. (*Id.* at 170). Dr. Omalu also testified that diabetes may have contributed to Mr. Pritchard's disease but that it was "less likely to have contributed" and that Mr. Pritchard's obesity and body mass index were not highly associated with NHL. (*Id.* at 169–70).

In his declaration, Dr. Omalu specifically explains the differential etiology method which he used and attempts to rebut the defense experts' opinions regarding Mr. Pritchard's obesity and diabetes. Specifically, Dr. Omalu states the following:

19. Part of the differential etiology method involves ruling out other factors other than the agent under consideration as being sufficient to constitute the sole cause of the disease in question. The Defense Experts have pointed out that Mr. Pritchard's elevated body mass index and his diabetes mellitus should be considered as factors contributing to his NHL, but they have not opined that these factors constitute a sufficient or sole cause of the disease.

20. Although obesity and diabetes are both associated with an elevated risk of NHL, the incidence of NHL among persons who are overweight or suffer from diabetes is nevertheless very low, so that these factors cannot be considered sufficient or sole causes of the disease. Rather, as a matter of generally accepted practice in the field of pathology, such factors should be considered as part of the "genetic makeup, proclivities and vulnerabilities" in the context of which the established pathogenicity of the compounds in question operate.

(Docket No. 135–2, Declaration of Dr. Omalu at ¶¶ 19, 20).

After considering these submissions, it is clear that Dr. Omalu's statements in the declaration are consistent with the opinions set forth in his expert report and during his deposition. Moreover, they are also presented for the purpose of rebutting the defense experts' opinions. Accordingly, the Court will not strike these opinions.

### C. Conclusion

Having found that there are no violations of the discovery rules, Rule 37 sanctions, including the striking of the declaration, are inappropriate. Accordingly, Defendants' motion to strike [137] is denied.

## IV. MOTION TO COMPEL/NUNC PRO TUNC MOTION TO AMEND

In a related matter, the parties have filed competing motions regarding the disclosures of written communications between Plaintiffs' counsel and Dr. Omalu. Dow filed a motion to compel seeking all communications between counsel and Dr. Omalu. (Docket No. 140). Dow argues that these documents must be produced due to the Plaintiffs' responses to Dow's Requests for Production of Documents wherein they expressly disclaimed or waived any objection to the production of such communications and Rule 26(a)(2) which independently requires the production of the documents. (*Id.*). In response, Plaintiffs move *nunc pro tunc* to amend their earlier responses to Dow's requests for production of documents in order to assert objections, and further argue that the documents requested are protected by the work product doctrine. (Docket No. 143).

### A. *Alleged Disclaimer*

■ Dow first argues that the Plaintiffs have disclaimed all objections to Dow's Requests for Production of Documents Numbers 2 and 3 by virtue of their responses to same in which they state that "[i]f additional documents applicable to the above request are obtained in the future by Plaintiffs and/or Plaintiffs' Attorneys, said documents will be provided." (Docket No. 140–2). In so arguing, they request that the Court strictly construe the language of Plaintiffs' responses. However, when read in context, the Court finds that the alleged disclaimer and agreement to produce additional documents, if any, is limited to documents related to Dr. Emilio Navarro. The responses to requests for production of documents were initially submitted in August of 2008. At that time, Plaintiffs were represented by Douglas Sholtis, Esquire (who has since withdrawn as counsel), who had identified Dr. Emilio Navarro as their expert witness. Likewise, Dr. Navarro has been withdrawn as an expert. Therefore, Plaintiffs' responses must be construed in light of these facts.

The written discovery and responses provide, as follows:

Request No. 2: All reports, draft reports, affidavits and/or statements prepared by any expert witnesses that will testify in the trial of this matter and a copy of the most recent curriculum vitae for each such expert.

Response: All pertinent documents within the possession of the Plaintiffs and/or the Plaintiffs' attorneys have been provided or have been provided in the Plaintiffs' initial disclosures. *See reports and documentation provided by Doctor Emilio Navarro.* If additional documents applicable to the above request are obtained in the future by Plaintiffs and/or Plaintiffs' Attorneys, said documents will be provided.

Request No. 3: Each Document relied upon, provided to and/or prepared by Plaintiffs' testifying experts, including but not limited to statements, reports, draft reports, summaries, letters or other items, pertaining to the allegations in the Second Amended Complaint.

Response: All pertinent documents within the possession of the Plaintiffs and/or the Plaintiffs' attorneys have been provided or have been provided in the Plaintiffs' initial disclosures. If additional documents applicable to the above request are obtained in the future by Plaintiffs and/or Plaintiffs' Attorneys, said documents will be provided.

(Docket No. 140–2 at 4–5) (emphasis added).

With respect to the response to request number 2, the language in the response is qualified by the inclusion of reference to the "reports and documentation provided by Doctor Emilio Navarro." Given that Dr. Navarro was the only expert identified by Plaintiffs at that time, the Court finds that it is a reasonable interpretation of this response to limit the Plaintiffs' agreement to produce only "reports, draft reports, affidavits and/or statements prepared by" Dr. Navarro.

Regarding response number 3, the term "Document" is broadly defined in the requests, encompassing virtually every type of communication, including emails. (Docket No. 140–2). However, the request is limited to those documents "relied upon, provided to and/or prepared by Plaintiffs' testifying ex-

perts." (*Id.*). Again, the only testifying expert disclosed at the time of the service of the responses was Dr. Navarro and Plaintiffs' response must be read in this context.

In sum, the Court does not find that the Plaintiffs agreed to produce any and all documents responsive to requests 2 and 3 to any expert, but, instead agreed to produce any documents responsive to those requests related to the potential testimony of Dr. Navarro. Accordingly, Dow's motion to compel is denied to the extent that they rely on the purported disclaimers in Plaintiffs' responses.[10]

### B. *Alleged Waiver*

■ As an alternative theory, Dow argues that the documents should be produced as any objections to the production of same were waived. (Docket No. 140). In response, Plaintiffs have moved *nunc pro tunc* to amend their responses in order to assert objections to Dow's requests under the work product doctrine. (Docket No. 143). Plaintiffs claim that any delay in submitting objections is "excusable" given the circumstances of this case. (*Id.*).

■ Generally, "an objection that information sought is privileged is waived if not timely stated." *Coregis Ins. Co. v. Baratta & Fenerty, Ltd.*, 187 F.R.D. 528, 530 (E.D.Pa.1999). Hence, as no objections were set forth by Plaintiffs to the initial discovery requests, they may be deemed waived. However, Rule 6(b)(1)(B) of the Federal Rules of Civil Procedure permits a district court, for good cause shown, to extend the period of time for a party to perform any act "on motion made after the time has expired if the party failed to act because of excusable

neglect." FED.R.CIV.P. 6(b)(1)(B). "[T]he determination of whether a party's neglect is excusable has been held to be an equitable determination, in which [courts] are to take into account all the relevant circumstances surrounding a party's failure to file timely." *In re Diet Drugs Prods. Liab. Litig.*, 401 F.3d 143, 153 (3d Cir.2005). In considering whether a party's neglect is excusable, the Supreme Court has directed courts to look specifically to 1) the danger of prejudice to the opposing party, 2) the length of delay and its potential impact on the proceedings, 3) the reason for the delay, and 4) whether the movant acted in good faith. *Pioneer Inv. Serv. Co. v. Brunswick Assocs. P'ship*, 507 U.S. 380, 395, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993).[11]

In this Court's estimation, the totality of the circumstances favor granting Plaintiffs leave to amend their responses. *See In re Diet Drugs*, 401 F.3d at 153. First, the danger of prejudice to Defendants is minimal. Despite Plaintiffs having been granted leave to proffer a new expert witness on medical causation, Defendants did not serve any additional or supplemental written discovery requests pertaining to the new witness. Instead, Defendants rely now on requests for production of documents and responses which were formerly served and the circumstances of this case have completely changed. Moreover, as discussed in further detail below, the documents sought in the motion to compel may be privileged under the work product doctrine. *See In re Cendant Corp. Securities Litigation*, 343 F.3d 658 (3d Cir.2003) ("work prepared in anticipation of litigation by an attorney or his agent is discoverable

---

10. The Court notes that it would have been better practice for current counsel to have reviewed the entire case file upon his entry of an appearance on behalf of Plaintiffs with a view toward making any and all supplements to discovery as required by Rule 26(e). FED.R.CIV.P. 26(e) ("A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response: (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the

discovery process or in writing; or (B) as ordered by the court."). Counsel would be well advised to proceed in this fashion in the future.

11. To the extent that Dow argues that Plaintiffs' motion should be denied for failure to submit an affidavit in support of their motion, the Court finds an affidavit is not necessary as the factual record has been fully developed given the record currently before this Court, including counsel's representations in support of Plaintiffs' motion during the motion hearing on September 22, 2009. (*See* Docket No. 142 at 75–79).

only upon a showing of need and hardship; ... 'core' or 'opinion' work product that encompasses the 'mental impressions, conclusions, opinion, or legal theories of an attorney or other representative of a party concerning the litigation' is 'generally afforded near absolute protection from discovery.' "). As Defendants are not entitled to documents which contain core attorney work product, they cannot claim prejudice by this Court permitting the untimely objections. *See id.*

Second, the delay by Plaintiffs is quite lengthy when viewed from the August 25, 2008 submission date as more than a year has passed. However, Plaintiffs' current counsel did not enter his appearance in this case until April 30, 2009 [12] and Plaintiffs' oral *nunc pro tunc* motion was made on September 22, 2009 in response to Dow's motion to compel, which was filed on September 18, 2009. Plaintiffs' counsel's interpretation of the initial discovery responses as pertaining to Dr. Navarro only and not all experts is also reasonable given the Court's finding above. Therefore, Plaintiffs' counsel showed diligence in making the motion. In addition, permitting Plaintiffs to amend their discovery responses will not cause any further delays in these proceedings.

Third, the reasons given for the delay, the expedited expert discovery schedule and counsel's need to repair other aspects of this case are well taken given the unique circumstances of this case to date.[13] Fourth, there is no evidence of bad faith and, given the above findings, Plaintiffs' counsel acted in good faith in asserting the objections.

Based on the foregoing, Plaintiffs' motion to amend is granted and Dow's motion to compel is denied. Plaintiffs shall be granted leave to amend their prior discovery responses as outlined in their motion to assert objections to the requests based on the work product doctrine.

### C. Do the 1993 Amendments to Rule 26(b)(2) "Trump" the Work Product Privilege ?

■ As a final argument, Dow contends that all communications between Plaintiffs' counsel and Dr. Omalu must be produced pursuant to Rule 26(b)(2) of the Federal Rules of Civil Procedure. Defendants rely on the 1993 Advisory Committee Notes to Rule 26(b)(2) and a series of decisions which have generally interpreted Rule 26(2) as requiring discovery of communications between counsel and a testifying expert. *See Synthes Spine Co., L.P. v. Walden,* 232 F.R.D. 460, 463 (E.D.Pa.2005). Plaintiffs, however, contend that the United States Court of Appeals for the Third Circuit has not adopted this approach, and that core attorney work product is still protected. *See In re: Teleglobe Comm. Corp.,* 392 B.R. 561 (Bkrtcy.D.Del. 2008); *In re: Cendant Corp. Sec. Litig.,* 343 F.3d 658 (3d Cir.2003). Plaintiffs also contend that the cases relied upon by Dow permit only the disclosure of those documents relied upon by the expert.

The United States Court of Appeals for the Third Circuit held in *Bogosian v. Gulf Oil Corp.,* 738 F.2d 587 (3d Cir.1984), that opinion work product is entitled to protection pursuant to Rule 26(b)(3) even if such information is produced to a testifying expert. While some courts have posited that the 1993 Amendments to Rule 26(b)(2) have abrogated or superseded this holding in *Bogosian,* the Court of Appeals has not addressed the issue nor have any courts within this District.[14] In

---

**12.** The Court notes that Mr. Rodes was permitted to represent Plaintiff Robert T. Pritchard at a Show Cause Hearing on April 1, 2009, wherein Mr. Pritchard faced potential sanctions for his conduct in this litigation, and subsequent proceedings related to same, but that Mr. Rodes did not formally enter an appearance on behalf of the Plaintiffs in this matter until April 30, 2009. (*See* Docket Nos. 104, 105, 115).

**13.** As the parties are well aware, Mr. Pritchard has limited financial means as he is currently living off of Social Security benefits, he also has a mental health condition and allegedly continues to suffer from the effects of his cancer, although it is in remission. All of these factors may have had an impact as to Mr. Rodes' handling of this case.

**14.** *See e.g., Quinn Const., Inc. v. Skanska USA Bldg., Inc.* 263 F.R.D. 190, 2009 WL 3443400 (E.D.Pa.2009); *F.T.C. v. Lane–Labs, USA, Inc.,* 2008 WL 4003927 (D.N.J. August 25, 2008) *Doe v. Luzerne County,* 2008 WL 2518131 (M.D.Pa. June 19, 2008); *Dyson Tech. Ltd. v. Maytag Corp.,* 241 F.R.D. 247 (D.Del.2007); *Synthes Spine Co.,*

this regard, the parties have presented a novel issue of the interplay between Rules 26(b)(2) and 26(b)(3) and the impact, if any, of the 1993 Amendments to Rule 26(b)(2) and the Advisory Committee Notes explaining same on the *Bogosian* decision. The Court now turns to those Rules and the corresponding Advisory Committee Notes.

As currently drafted, Rule 26(b)(2)(B) requires the production of a written report of a testifying expert and sets forth the requirements of the written report, including that the report must contain "a complete statement of all opinions the witness will express and the basis and reasons for them," "the data or other information considered by the witness in forming them" and "any exhibits that will be used to summarize or support them." FED.R.CIV.P. 26(b)(2)(B)(I)-(iii). In reference to this Rule, the 1993 Advisory Committee Notes explain that:

> The report is to disclose the *data and other information considered by the expert* and any exhibits or charts that summarize or support the expert's opinions. Given this obligation of disclosure, litigants should no longer be able to argue that *materials furnished to their experts to be used in forming their opinions*—whether or not ultimately relied upon by the expert—are privileged or otherwise protected from disclosure when such persons are testifying or being deposed.[15]

FED.R.CIV.P. 26, 1993 Advisory Committee Notes (emphases added). The attorney work product doctrine is codified at Rule 26(b)(3), which provides:

(3) Trial Preparation: Materials.

(A) Documents and Tangible Things. Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:

(i) they are otherwise discoverable under Rule 26(b)(1); and

(ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

(B) Protection Against Disclosure. If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

FED.R.CIV.P. 26(b)(3).

There is a split of authority regarding whether the 1993 Advisory Committee Notes, when read in conjunction with the expert disclosure requirements codified at Rule 26(b)(2), mandate the disclosure of all materials submitted to a testifying expert, regardless of any claim of privilege. However, as recognized by the court in *In re Teleglobe Communications Corp.*, 392 B.R. 561, 575 (Bkrtcy.D.Del.2008), the courts that have held that such materials are discoverable have "truncated" the above quoted portion of the Note and excluded the first sentence from the analysis. *See* Fed.R.Civ.P. 26, 1993

*L.P. v. Walden*, 232 F.R.D. 460, 462–64 (E.D.Pa. 2005); *Vitalo v. Cabot Corp.*, 212 F.R.D. 472 (E.D.Pa.2002).

**15.** The Court notes that "data" as used in the Notes is undefined in the Rules, although its use in Rule 26(b)(2)(B) does not suggest that "data" includes materials that are core attorney work product. *See* FED R.CIV.P. 26(b)(2)(B) ("The report must contain ... the data or other information considered by the witness in forming them."); *In re Teleglobe*, 392 B.R. at 575 (only factual data must be produced pursuant to Rule 26(b)(2)(B)). "Data" can best be defined with reference to Rules 703 and 705 of the Federal Rules of Evidence, which suggest that data, sci-entific or otherwise, is that information used by the expert witness in the formation of or in support of his or her opinions. *See* FED.R.EVID. 703, Bases of Opinion Testimony by Experts (data upon which expert relies may be that "reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject"); *see also* FED.R.EVID. 705, Disclosure of Facts or Data Underlying Expert Opinion ("The expert may testify in terms of opinion or inference and give reasons therefor without first testifying to the underlying facts or data, unless the court requires otherwise. The expert may in any event be required to disclose the underlying facts or data on cross-examination.").

Advisory Committee Notes (emphasis added) ("The report is to disclose the *data and other information considered by the expert* and any exhibits or charts that summarize or support the expert's opinions."). The *Teleglobe* court interpreted the cited language as "suggest[ing] that only factual data and information must be produced, not the legal theories or other attorney work product." *Id.* at 575. In this Court's estimation, this is the more reasonable interpretation.

This interpretation is further supported by the decision in *In re Cendant.* While *In re Cendant* involved the interplay between Rules 26(b)(3) and 26(b)(4) and the application of the work product doctrine to a nontestifying expert, the Court finds its reasoning persuasive regarding the issues at hand. In *In re Cendant,* a 2003 decision which postdates the 1993 Amendments to Rule 26, our Court of Appeals held that "Rule 26(b)(3) provides work product protection independently of Rule 26(b)(4)(B)." *In re Cendant,* 343 F.3d at 664–65. The holding in *In re Cendant* supports a conclusion that Rule 26(b)(3) operates independently of the other provisions in Rule 26, unless otherwise noted in the Rules. *See In re Teleglobe,* 392 B.R. at 577 ("the amendments to Rule 26 did not change the Third Circuit's fundamental decision: that the work product doctrine articulated in Rule 26(b)(3) is not trumped by the need to disclose information contained in other provisions of that Rule."). Importantly, Rule 26(b)(3), which codifies the protection afforded to attorney work product, does not include any exceptions for discovery of testifying experts. *See* FED.R.CIV.P. 26(b)(3). Instead, Rule 26(b)(3)(A) simply sets forth the general rule that work product is not discoverable and lists the pertinent exceptions. *Id.* Specifically, the Rule provides *"[b]ut, subject to Rule 26(b)(4),* those materials may be discovered if: (I) they are otherwise discoverable under Rule 26(b)(1); and (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means."

FED.R.CIV.P. 26(b)(3) (emphasis added). To this end, the *Cendant* Court quoted with approval the analysis set forth in its earlier decision in *Bogosian,* which addressed the former version of Rule 26(b)(3).

> the first sentence [of Rule 26(b)(3)] requires protection against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party. The proviso introduces the first sentence of Rule 26(b)(3) ("Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents ... prepared in anticipation of litigation or for trial ...") and signifies that trial preparation material prepared by an expert is also subject to discovery, but only under the special requirements pertaining to expert discovery set forth in Rule 26(b)(4). The proviso does not limit the second sentence of Rule 26(b)(3) restricting disclosure of work product containing "mental impressions" and "legal theories." Thus, it does not support the district court's conclusion that Rule 26(b)(3), protecting this category of attorney's work product, "must give way" to Rule 26(b)(4), authorizing discovery relating to expert witnesses.

*In re Cendant,* 343 F.3d at 665 (quoting *Bogosian,* 738 F.2d at 594). Rule 26(b)(4) codifies only the extent of discovery permitted of an expert, i.e., testifying experts may be deposed while non-testifying or consulting experts may not be subject to discovery except as provided in Rule 35(b) or upon a showing of exceptional circumstances. FED. R.CIV.P. 26(b)(4)(A)-(B).[16] Accordingly, there is nothing in Rule 26(b)(4) which limits the protection afforded to opinion work product under Rule 26(b)(3)(B). FED.R.CIV.P. 26(b)(3)(B) ("If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation."). Indeed, as one district court has recognized, "[a]n interpretation of Rule

---

**16.** Rule 26(b)(4)(A) provides that "[a] party may depose any person who has been identified as an expert whose opinions may be presented at trial. If Rule 26(a)(2)(B) requires a report from the expert, the deposition may be conducted only after the report is provided." FED.R.CIV.P. 26(b)(4)(A).

26 that mandates the production of core work product disclosed to an expert would render the language in Rule 26(b)(3) superfluous." *Krisa v. Equitable Life Assur. Soc.,* 196 F.R.D. 254, 260 (M.D.Pa.2000).

Finally, given the decisions by the Court of Appeals in *Bogosian* and later in *In re Cendant,* which are binding on this Court, as well as the language of Rule 26, the Court finds that the 1993 Amendments to Rule 26 did not alter the central holding in *Bogosian* that opinion work product produced to a testifying expert is protected by Rule 26(b)(3). As the Court of Appeals noted in *Bogosian,* "[e]ven if examination into the lawyer's role is permissible ... the marginal value in the revelation on cross-examination that the expert's view may have originated with an attorney's opinion or theory does not warrant overriding the strong policy against disclosure of documents consisting of core attorney's work product." *Bogosian v. Gulf Oil Corp.,* 738 F.2d at 595 (3d Cir.1984). Our Court of Appeals has yet to abrogate this holding, and cited *Bogosian* with approval in *In re Cendant.* This Court declines the invitation to do so at this time. Therefore, Defendants are not entitled to wholesale discovery of the communications between Plaintiffs' counsel and the testifying witness, Dr. Omalu. Accordingly, Dow's motion to compel is denied.

### D. *Plaintiffs Must Produce A Detailed Privilege Log*

Given this holding, Plaintiffs have been permitted to amend their discovery responses in order to assert an objection to Dow's requests for production of documents based on the work product doctrine. In their papers, Plaintiffs have asserted that a "privilege log" is not required by Rule 26(b)(5) in order to properly raise an objection based on the work product privilege. This Court disagrees with Plaintiffs' interpretation of Rule 26(b) (5). In conjunction with their objections to the written discovery, Plaintiffs shall also produce to Dow a detailed privilege log listing each document withheld, "expressly make the claim" of privilege or work product protection, including specifying whether such documents constitute factual or opinion work product, and "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." FED.R.CIV.P. 26(b) (5). If Dow has any objection to the privilege log produced, or any challenge to the claimed privilege, counsel are directed to meet and confer in an effort to resolve such disputes prior to bringing the matter to the attention of the Court, by way of a motion.

### E. *Conclusion*

Based on the foregoing, Plaintiffs' Motion for Leave to Amend Discovery Responses [143] is granted and Dow's Motion to Compel [140] is denied. Plaintiffs are granted leave to amend their discovery responses and are also directed to produce a privilege log to Dow in support of their claimed privilege.

## V. CONCLUSION AS TO ALL MOTIONS ADDRESSED IN THIS OPINION

For the reasons stated herein, and in accordance with the Order issued on October 29, 2009, the Court confirms the following rulings. Defendants' motion to strike [137] and Dow's motion to compel [140] are denied and Plaintiffs' motion for leave to amend discovery responses [143] is granted. Plaintiffs are also directed to produce and serve a detailed privilege log in support of their objections to the discovery, pursuant to this Court's Order of October 29, 2009.